May it please the court, John Carlton on behalf of the appellant, Earl Roy Harvey. What I'd first like to address, your honors, is the quantum of evidence, or the showing, that had to have been made in this case to support the warrantless search of Mr. Harvey's residence. And the cases that really explain the type of analysis that we have to go through are the Knight's case and the Sampson case by the Supreme Court. And what they said is that this analysis. Just a minute, please. I'm sorry. This is a supervised release case. That's correct. I was a little baffled by the fact that the brief seemed to have certain assumptions about. I couldn't tell whether you were assuming that supervised release was like parole or supervised release was like probation or what. But it's neither of those really. So how do we know the answer to that? That's right, your honor. Yes, supervised release is really like neither of those. So do we have any case law on supervised release in particular? I'm not aware of any that would apply to this case. But how is this different from parole? Well, it's different in this sense. Parole involves an early release from a sentence of imprisonment. It is a substantive. 78 months of which he served about, what, five years on the Nevada conviction and then it is to be followed by three years of supervised release for which a violation the court may either return him to prison to continue serving his original 78-month sentence or add a term of imprisonment for whatever the violation was that he committed. So it's really more like parole than it is like probation, is it not? Well, I'd say it's in between the two. I'd say it's more severe because parole doesn't allow the parole board to add time to the defendant's sentence. You just go back and serve out the remainder of the sentence. Here in the federal system, you get the double whammy. Well, that you can if there's a violation of supervised release. But the point that I'd like to make is that parole is a substitute for a term of imprisonment that was imposed. Supervised release is a different kind of punishment. It's a different there is a term of imprisonment. Does any of this matter if there was reasonable suspicion? Pardon me? If there was reasonable suspicion, does any of this matter? Yes, I think it does, Your Honor, and here's why. The cases finding that something less than probable cause can be used to justify a warrantless search of a probationer or somebody on parole, all involved, and I think the key element in those cases is the fact that the conditions of release specifically allowed not just for a warrantless search, but for a warrantless search on some reduced showing. In the Knight's case, it was a probation matter, and the condition of release allowed for a warrantless search on reasonable suspicion. Mr. Carlson, what do we do with the district court's factual finding? First of all, that your client was fully and fairly warned of the search conditions, and secondly, that as in Judge Matz's statement, it wasn't even close that the evidence established reasonable suspicion. Well, I think, first of all, that the judge's finding that it wasn't even close or that he was fully and fairly informed was the judge's finding that he had been presented the conditions. Right, but he also, wasn't Judge Matz also referring to based on the testimony of the probation officer as to your client's behavior, the switching of the hard drive and so on after the officer visited his home, that there was more than ample reason to believe that he was in violation of the terms of the supervisory release? There's two issues that your Honor has raised. One, was he informed of the condition? Two, was there a sufficient showing to establish the cause for the warrantless search? And we have a factual finding from the district court on both that wouldn't we have to find clearly erroneous in order to afford you any relief? Well, it depends, first of all, what the standard that the judge should have applied was. But Knight says that reasonable suspicion is enough, and we have a factual finding by the district court that the evidence here did more than establish reasonable suspicion. Knight said... So I don't have to declare Judge Matz's ruling clearly erroneous before I can reverse and remand as you're asking us to do. Well, I don't believe we have to get there because Knight's, I think, is distinguishable. Knight's is distinguishable because the condition that the defendant in that case was clearly and unambiguously... Your argument, as I understand it then, is that neither Knight's nor Sampson is controlling. That's correct, Your Honor. And not because... The analysis is... And not because it's supervised release, but because of the nature of the particular condition. That's exactly right. That in this case, the condition of supervised release that's at issue allowed for a warrantless search, but said nothing at all about a reduced level of cause. And in both Knight's and Sampson, I think the key element in both of those decisions was did the defendant have a reduced expectation of privacy based upon the condition of release, in substantial part, not total. But isn't the whole purpose of imposing conditions of release and unannounced visits by the probation officer to dispense with a requirement for a search warrant so that the probation officer can just drop by unannounced and say, what are you doing? Oh, you're sitting at your computer. What are you looking at? Let me see it. Well, that would have been... Isn't that the whole purpose of the system? That would have been the case in both Knight's and in Sampson because... No, here. I'm talking about supervised release. Well, that's right. But in that sense, the probation officer would visit under probation. Under Sampson parole, there would be visits having to do with that. I don't think you're answering my question. Well, I'm hopefully getting to that. Let's get to it sooner rather than later. All right. I would submit that the visits by the probation officer were substantively different than the full-blown search that was going on here. Remember, Mr. Harvey didn't live by himself in a one-room apartment. He lived in a house with his parents. But these activities occurred in his bedroom in his parents' home. And in the garage and other parts of the house. And if it wasn't necessary to have this special condition, then there would be no reason to put it in in the first place. All it would have to say is that you're subject to visits by the probation office. But this and basically all of the other cases that we're discussing here involve additional conditions providing for warrantless searches. Accepting your notion that Knights, which I gather is that leaving aside the nature of the condition, that we should look at this as if it was a probation case, not a parole case. As I think I said before, this is in between. I don't think that there's a case. Well, if it's in between, then no better than Knights. That's right. No better than Knights. Okay. Well, no, let me take that back. Knights, again, involved a clear statement in the condition. I understand that. I said leaving that aside. Okay. And so then factoring that in, it seems to me that Knights was a little mushy, as was Sampson, as to exactly what the role of the condition is. It seems to be, in other words, I don't know that one can't read Knights as saying on a parole search, the standard's reasonable suspicion, no matter what the condition is. Do you think that's not fair? Well, I would say it's fair to say that both Knights and Sampson were a little mushy on the issue. But if you look at, well, in both of those cases, if it was just the fact of being on probation or parole, then the Court wouldn't have had to mention anything about the probation condition. Yeah, right. But on the other hand, they certainly refused to look at it as a contractual matter. That's true. Let me draw your attention to the Court's grant of certiorari in Sampson, where they said that the grant was made to answer a variation of the question that left open in Knights whether a condition of release can so diminish or eliminate a released prisoner's reasonable expectation of privacy that a suspicionless search, in that case, by a law enforcement officer would not offend the Fourth Amendment. So it was the condition of release that was essential to the determination, not the status of being a parolee or a probationer. Okay. You're very close to out of time, so if you want to reserve some time, you should do that. Thank you. I'll give you a minute. I'll give you one minute in rebuttal, unless your opponent takes a lot more time. May it please the Court. Curtis King on behalf of the United States. Do you think we have to decide in this case what the – do a Sampson slash Knight for supervised release? I don't think to resolve this case, the Court needs to reach that. But I do apologize, and I have to start with, having reviewed the briefs, I think this Court has answered the question as to whether supervised release is probation or parole, and did so in United States v. Betts, 511-5-3rd – F-3rd-872. We, in fact, submitted a 28-J letter on April 4th of last week, and it appears the Court doesn't have it. I have copies for the Court to pass up, if that would be of help. Refresh my recollection. What did we say in Betts? Judge Kleinfeld was addressing a challenge to a search condition for federal supervised release that permitted searches. And the language of the search condition in Betts was searches with or without a warrant. In that case, then, what the Court said, Judge Kleinfeld said, is this condition, with or without a warrant, is similarly worded to the one in Sampson. Notably, Sampson was without a search warrant and with or without cause in the Court in Betts. Of course, it's not similarly worded. It just isn't true. Well, according to this Court in that opinion, it was. Well, that may be true, but it's just wrong. But even more so, going further, and I understand, Judge Berzon, the focus on the language, having seen the King defendant. We have disagreed in the past on this issue. But also, what Betts does say is that federal supervised release is much more akin to parole than probation. And in fact, cites Sampson and says that in Sampson, in fact, the Supreme Court made such analogies or comparisons between the two. And I think it makes sense, quite frankly, when this Court is talking about the difference between probation and parole and reduced expectations of privacy. Supervised release on the federal system looks quite a bit more like parole because this is somebody who's been adjudged to have done something more serious, sentenced to prison, is now coming out and is subject to conditions. And then we start thinking of the reasonable, legitimate government interest in looking after and encoding their conditions. But he's actually served his term, right? He's served his term of imprisonment. He's had a term of imprisonment, a term of supervised release. He's served his term of imprisonment. He's not out conditionally. True. And, Your Honor, in that regard, it is different from parole. But nonetheless, for violating any of those conditions of supervised release, he can go back into custody for the maximum term of supervised release imposed. So in that regard, it is like parole. But I would submit that the more important distinction or similarity between parole and federal supervised release is the need to look after him, the severity of the crime, to maybe hope that he can be rehabilitated and protect society and be reintegrated. Is that all true in probation? It may very well be. But, again, when this Court has looked at, and Samson talks about the difference between probation and parole, then we're looking at the severity of the crime. And so when somebody's placed on probation, it's because for some reason the Court found or when they were sentencing, it wasn't severe enough to put them into imprisonment. So I think those distinctions are important, and I think that's why federal supervised release looks like parole. Your brief was somewhat confusing to me because you, for the most part, did assume that it was similar to probation and that reasonable suspicion applied. I apologize for that. I took over this case, but I accept the government's brief for what it is. Nonetheless, even if reasonable suspicion is required, well, actually, the Court doesn't even need to reach that. But, in fact, reasonable suspicion certainly was here, and I think that's why we advanced, because it's one way for this Court to quickly resolve this case, the fact that it was abundantly clear that reasonable suspicion was present. And the probable cause, I think, was here. The probation officer saw an unauthorized computer. The probation officer saw that the defendant was using the Internet, all violations of his conditions. The defendant initially lied about whose computer it was, and then when the probation officer went back that same day, the computer was gone. Then, four days later, when the defendant is called in to visit with the probation officer, finally the defendant comes clean about the computer being his, admits that he has been using Yahoo and email accounts, admits the use of Internet, all violations of his conditions. But what was his conviction for? His conviction for was for travel with intent to have sex with a minor. In this particular case, it was a 14-year-old boy. I believe — But it wasn't about child pornography as such. It was not, Your Honor. It was 18 U.S.C., I believe, 2423. So we had to do probable cause to be back into the issue of the last case. I'm sorry? So if we had to talk about probable cause, we might be back into the issue in the last case. Maybe, but certainly probable cause is not necessary. The one thing that Knights has made very clear is that it's reasonable suspicion at most, and that's for a probationer, and here we have the supervisor, Lee Siegel. Well, I mean, again, there's a murkiness, at most given the condition in that case. But if one were to read this condition, as I perhaps would in light of my in-king descent, to say that it doesn't — I mean, it doesn't say anything about the level of cause. It simply says without a warrant. So if I were to think, well, all that does is eliminate the warrant. It doesn't eliminate the probable cause requirement. Then what? Well, a couple things, Your Honor, I think distinguish this case from the prior cases that have been discussed about. This is not a case of those people. In this particular case, what was also known is that the conviction was travel through intent to have sex with a 14-year-old boy, and as set forth in the PSR, the way in which he initiated contact with that boy was contact through the Internet and having communications that way. If we think about what we were looking for, although the defense — It was pretty clear, too, that he was trying to hide whatever was on his computer. But the question was, why would you think it was pornography on the computer rather than, you know, evidence of some other crime? Well, Your Honor, in this particular case, they weren't necessarily looking for child pornography. In fact, that is what they did find. But this was a probation search, and this is a defendant who actually had been violating the conditions of a supervised release. So when they went back in there in June, this is pursuant to the search conditions. There's no warrant looking for child pornography. So why wasn't there probable cause of a parole violation, period? I think there was probable cause. If not, it's certainly legal suspicion. Yeah, he had already been communicating with a known sex offender that the probation officer was aware of. He had a computer in violation of his conditions. He was searching the Internet and had an email address, all of which was in violation of the conditions. He seemed to be hiding something because he — Without a doubt, Your Honor. He was certainly hiding something. In fact, when he finally delivered his computer to the probation office, they found that the hard drive had been swapped out. After they did a computer forensic analysis over the following month, they found out the fact that that computer had been either tampered with or wiped clean because the dates on the files on the new drive in the computer that he turned over corresponded to the April 15th date on which the probation officer first did the search — That's really the timing of that swap out that is perhaps the most damning, right? Yeah, among so many things, Your Honor. But yes, that is incredibly damning, the fact of the swap out of the hard drive and those dates that suggest that he had something to hide, which kind of gets into the staleness, too. The nature of this type of evidence is it's digital data. It is in existence. It has longevity. And so for them to have come back within two months after learning of his improper use of the computer and the Internet, I think the staleness argument — Well, guns have longevity, too, but at some point looking for them becomes stale. But that may be more because people have reasons to get rid of guns, but people who like child pornography aren't necessarily going to get rid of it. That may be true, Your Honor. But here I think there was no reason to believe that his conduct hadn't abated. And again, they weren't simply looking for child pornography. They were looking for evidence of violations of his supervised release conditions being broken, so contact with other child sex offenders, which he had been seen having a phone call with, as well as any other communications and child pornography. Well, isn't one problem — well, maybe this is a peculiar notion, but they already had that. They already knew that he was violating his parole. Right. I mean, they didn't have to search for anything to know that. I guess the question is, were they laying it on too thick at that point? Well, I mean — Can they search for more to find out how much he was violating at that point? I think it goes to the very purpose of federal supervised releases, to make sure that we can protect the community and that there's a possibility to keep him from harming himself. So here he is already admitting to using a computer and Internet, which he's not supposed to. Who knows what else is going on? They've now looked at the hard drive and found out that he has something very severe to hide. It's time to go back in there and find out what else he is up to. In fact, it's a very measured — What was on the hard drive? I don't remember that. I'm sorry, Your Honor? Oh, the hard drive was the doctored hard drive. Exactly right. The doctored hard drive with, I assume, clean files at that time, but the damning evidence of the — They found the old hard drive in his garage, right? They did, and that is what had the child pornography, Your Honor, among other digital data that had child pornography. So he didn't get rid of that either? No. Apparently a collector. Your Honor, if there's any other — No, we can't make that conclusion under Ninth Circuit law, remember? I'm all too familiar with that from this morning, Your Honor. If there are any other further questions, we would submit on our briefs, as well as the 28-Jeller. Should I pass this up to the clerk? Sure. Okay. I did get it, but fine. I'm sorry? I did not. Or if I did, my law clerk hasn't. I haven't seen it yet. This is the Betts case that you're giving us? It is citing to both Betts as well as this Court's very recent case in King, both for the proposition that no reasonable suspicion was required here, but in any event, that Betts, I think, makes fairly clear. The other thing about King was that in terms of the condition, what I understood the majority to be saying in King as to why this essentially parallel language was authorized suspicionless searches was because the California courts had so interpreted it. Now here, the California courts' view would not be of any pertinence, right? I agree, Your Honor. So that aspect of it, I mean, King didn't say this language always means that. He says it means it when it's a California search condition. That may be right, Your Honor. On the other hand, when you are looking at the search conditions, and in King it was, I believe, subject to a warrantless search condition with or without probable cause, and you're looking at Betts, which says with or without a warrant, and Harvey, this case, which says without a search warrant, and Betts has said that it is similarly worded to Samson, which was without a search warrant. I have a very hard time understanding why we take things that say something different and say they say the same. I'd like an explanation for that. I understand the King majority, which obviously I took on and didn't agree with, but at least it has a basis, which is California said so. But here, if California doesn't say so, why do we say A equals B? They're not the same. I think, Your Honor, because when we look at all of these cases together, it's not simply about the wording of the condition, and I agree if it was all about simply the wording of the condition, these differences might make, well, a difference. But I think what the courts are looking at also is status, and I think one's status certainly affects one's reasonable expectations. That's true, but then you should just say that and not say that A equals B. I don't disagree, and I would certainly advance status as being more important than the condition, and then we would be getting out of this probably, if you will, conundrum of comparing words and phrases that the courts are doing differently. But at least the case here is we have Mr. Harvey, who's on federal supervisor lease, which looks a lot more like parole, which means he has substantially reduced expectations of privacy, and he has a search condition that looks fairly close to the one in Betz. But nobody seems to think that if he had no search condition, this would be the case. I think that's right. If there's no search condition imposed, so there has to be a condition. But I think the focus on the wording of the condition may be not as important. All right. Beyond your time, thank you very much for your time. Thank you, Your Honor. I'll give you a minute in rebuttal. Pardon me? I'll give you a minute in rebuttal. Very briefly, Your Honor. I think the point with Knights, Sampson, and King is that – What about the Spetz case? What do you think about that? What about the case in the 20HA letter? The issue in Betz was whether the court abused its discretion in imposing a condition of search with or without a warrant. It had nothing to do with the level of cause that would have been necessary to support a search. And they said the court didn't abuse its discretion in doing that. So that's really not applicable here. The issue here is what was the level of cause. And the court could, under Knights or Sampson, have imposed a condition requiring a lesser showing of cause. If you liken supervised release closer to probation, then I think Knights wouldn't allow anything less than reasonable suspicion. If you liken it closer to parole, then Sampson says it's – Well, we know that isn't true from King, don't we?  Don't we know that isn't true from King? King, as I think Your Honor pointed out, really isn't relevant here because what they said there was because California courts had construed – Yes, but it would allow a search on less than reasonable suspicion if that was the condition. Yes, if that was the condition. But there was no condition here on less than reasonable cause. Now, that being so, the default is always probable cause. The court could have imposed a condition. If it had, Mr. Harvey would have had been informed of it. It didn't do it. And I'd say that the default position would be probable cause. Thank you. Can I ask you one more question? I'm sorry. Yes, you can. Why isn't there probable cause here? Pardon me? To think that there was authority to search not necessarily for child pornography but for violations of parole. Well, what they had was evidence that he may have violated his supervised release in April. I mean the supervised release condition. In April, all right? Two and a half months passed. During that two and a half month period, the probation officer, in fact, visited his house twice. And there was nothing developed in the course of those visits that supported this search. So is it totally a staleness argument? If they had done it right, it would have been probable cause? That's right. It's a staleness argument. So if we didn't buy that, we could just decide it based on probable cause, forget reasonable suspicions, forget all these arguments. That's right. All right. Thank you.
judges: Berzon, Tallman, Smith